UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MIDDLEBOROUGH VETERANS' OUTREACH CENTER, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 11-10688-JLT |
| PAUL J. PROVENCHER, et al., | * * * | |
| Defendants. | * * | |

MEMORANDUM

February 29, 2012

TAURO, J.

I.  Introduction

Plaintiff, Middleborough Veterans' Outreach Center, Inc. is a public charity in Middleborough Massachusetts.  This case arises from a series of letters written by Defendant Provencher that were subsequently published in a number of local newspapers in September, 2010.  In April of 2011, Plaintiff filed the complaint in this action alleging that the letters constituted a violation of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment because the letters endorsed similarly situated charities while "denigrating" Plaintiff's charity.  Plaintiff brings two counts under 42 U.S.C. § 1983 against Defendants for violation of Plaintiff's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment.

Currently before the court are cross motions for summary judgment argued by the parties at a hearing on November 22, 2011.  For the following reasons, Defendants' Motion for Summary

1

Judgment [#29] is ALLOWED.  Plaintiff's Motion for Summary Judgment [#16] is, accordingly, DENIED.

II.     Background

    A.     Factual Background

Plaintiff, Middleborough Veterans' Outreach Center, Inc. is a non-profit public charity located in Middleborough, Massachusetts.  Its mission is to provide outreach assistance to veterans and their families in surrounding towns.  Defendant Provencher is the Veterans' Agent for the town of Middleborough, Massachusetts.  As such, he is tasked with administering veterans' benefits and assisting veterans in accessing benefits and services available to them.[1]

On September 6, 2010, Defendant Provencher wrote a letter to the Taunton Daily Gazette advising the public that Defendant Provencher did not support organizations that use "telemarketing or direct contact solicitation," except for "the veterans' organizations that do the[] annual poppy or forget-me-not drives."[2]  The letter mentioned Plaintiff as one of the organizations that had been telemarketing or direct contact soliciting.  The letter also advises potential donors to check with the Attorney General's Office in order to determine what percentage of donations to each organization is actually used to assist veterans, as opposed to being used to cover administrative or other expenses.[3]  The letter tells readers to research organizations with the Attorney General's Office, and invites readers to call Defendant's office for

---

[1] Code of Massachusetts Regulations 108 Section 12.04.
[2] Bond Aff. Ex. A [#29-1].
[3] See id.

"further advice and guidance on this issue."[4] Defendant signed the letter as, "Paul Provencher, Director of Veterans' Services, Middleborough, MA."[5]

On September 30, 2010, a similar letter was published as a letter to the editor in the Middleborough Gazette.[6] This letter was substantially the same as the September 6, 2010 letter, and again mentioned Plaintiff by name. The letter was again signed by Defendant as "Paul Provencher, Director of Veterans' Services, Middleborough MA."[7]

On October 4, 2010, the Taunton Daily Gazette published an article based on Defendant's letter.[8] In that article, Defendant Provencher described the purpose of his recent letters as being to, "point out that many non-profits say they are helping veterans but have high administrative costs."[9] The article contained extensive quotations from Plaintiff's executive director Joe Thomas, and detailed the extent of Plaintiff's fund-raising activities.[10]

Plaintiff alleges that as a result of the publication of the two letters and the article, Plaintiff's ability to raise funds for veterans programs has been damaged.[11] On October 13, 2010, the Middleborough Council on Aging withdrew its permission for Plaintiff to use the Council on Aging to sell tickets for its "Keep Our Veterans Warm" raffle.[12] The Council on Aging, in a letter from its Executive Director Andrea M. Priest, stated that it was withdrawing its permission

---

[4] Id.
[5] Id.
[6] Bond Aff Ex. B. [#29-1]
[7] Id.
[8] Bond Aff Ex. D. [#29-1]
[9] Id.
[10] Id.
[11] Compl. [#1] at ¶ 26.
[12] Id. at ¶ 27-30.

because it did not "want to promote an unknown entity," and it was concerned "about fundraisers and the amount of money that goes into administration versus direct help to veterans."[13]

    B.    <u>Procedural Background</u>

On April 21, 2011, Plaintiff filed the Complaint in this action.[14] Plaintiff brought suit under 42 U.S.C. § 1983 asserting a violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff brings two counts against Defendant Provencher in his individual and official capacities, and against the Town of Middleborough.[15] Plaintiff seeks damages in the amount of one million dollars, punitive damages from Defendant Provencher in his personal capacity, and declaratory and injunctive relief against the Town of Middleborough and Defendant Provencher in his official capacity.[16]

On August 29, 2011, Plaintiff filed a <u>Motion for Summary Judgment</u> [#16] and supporting documentation. On September 26, 2011, Defendants filed a <u>Cross Motion for Summary Judgment</u> [#21], which was later withdrawn, and superseded by <u>Cross Motion for Summary Judgment</u> [#29], filed on October 7, 2011. The parties appeared before the court for oral argument on the motions on November 22, 2011, and the matter was taken under advisement.

III.    <u>Analysis</u>

Summary judgment is to be granted when the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17] When called upon to decide a motion for summary judgment, "'a court is not authorized to make

---

[13]Bond Aff. Ex. E [29-1].
[14]Compl. [#1].
[15]Compl. [#1] ¶¶ 35-54.
[16]Compl. [#1] ¶¶ 49-54.
[17]Fed. R. Civ. P. 56(c).

findings of fact,' . . . [and it] must examine the record 'in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party.'"[18] In considering cross-motions for summary judgment, the court "'must view each motion, separately,' in the light most favorable to the non-moving party."[19]

To state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that he has "'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"[20] A Plaintiff must allege "facts indicating selective treatment 'compared with others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"[21]

In order for Plaintiff to give Defendant fair notice and to state "facially plausible legal claim[s]," under the first prong of the Equal Protection Clause standard, he must, "identify his putative comparators and put forth some facts showing the existence of malice or some other impermissible consideration."[22] When determining whether Plaintiff and the putative comparators are similarly situated, "'exact correlation is neither likely nor necessary, but the cases must be fair

---

[18] OneBeacon America Ins. Co. v. Commercial Union Assur. Co. of Canada, 804 F. Supp. 2d 77, 85-87 (D. Mass. 2011) (Tauro, J.) (quoting Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 113 (D. Mass. 1999); de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)).

[19] OneBeacon, 804 F. Supp. 2d at 86 (quoting Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010) (citing Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996))).

[20] Engquist v. Oregon Dept. of Agr., 533 U.S. 591, 601 (2008) (quoting Olech 528 U.S. at 564)).

[21] Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 57 (1st Cir. 2006) (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)).

[22] Harron v. Town of Franklin, 660 F.3d 531, 537 (1st Cir. 2011).

congeners. In other words, apples should be compared to apples.'"[23] To effect this comparison, Plaintiffs claiming an equal protection violation must first "identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were 'singled . . . out for unlawful oppression.'"[24]

In the present matter, Plaintiff rests his Equal Protection claim on the fact that Defendant Provencher, in his public letters, and in the October 4, 2010 article, endorsed two other veterans' charities while "denigrating" plaintiff's charity.[25] The parties agree on the content of the letters and the article.[26] The threshold question, therefore, is whether Plaintiff is similarly situated to the two veterans' charities that Defendant Provencher endorsed.

In each of the two letters, Defendant Provencher emphasized that he does "not support any organization that uses telemarketing or direct contact solicitation except for the veterans' organizations that do their annual poppy or forget-me-not drives."[27] Plaintiff contends that Defendant is making a distinction between charities that engage in telemarketing or direct contact solicitation, and those that do not.[28] Plaintiff argues that because it does not engage in telemarketing, it is similarly situated to the charities that received Defendant Provencher's

---

[23] Lakeside Builders, Inc. v. Planning Bd. Of Town of Franklin, 2011 WL 31655250, at *3 (D. Mass. March 21, 2002) (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)).
[24] Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (quoting Dartmouth Review 889 F.2d at 19 (citations omitted)).
[25] See Compl. [#1] at ¶¶ 35-54.
[26] See Plaintiff's First Statement of Material Facts [#17]; see also Defs' Cross Mot. for Summ. J., Ex. F [#29-1].
[27] See Bond Aff. Ex. A-B [#6-1].
[28] Memo in Supp. of Pl.'s Mot. Summ. J. [#19] at 7-10.

6

endorsement.[29] The most logical reading of the statement that Defendant Provencher does "not support any organization that uses telemarketing or direct contact solicitation except for the veterans' organizations that do their annual poppy or forget-me-not drives," is that the organizations that do the annual poppy or forget-me-not drives do engage in telemarketing or direct contact soliciting, but that Defendant Provencher supports them anyway. Plaintiff's purported classification based on whether or not a charity uses telemarketing is beside the point because the plain text of the letter clearly indicates that Defendant Provencher believes all of the charities mentioned use either telemarketing or direct contact solicitation.

In the letters, Defendant Provencher states that the reason for this difference in support is based on the amount of donations that actually go to the named charitable cause, as opposed to administrative costs and overhead.[30] In order for Plaintiff to prove that it is similarly situated in all relevant respects to the charities that received Defendant Provencher's endorsement, therefore, it must show that a similar percentage of its charitable donations are used to aid veterans, as opposed to being used for administrative costs or overhead.

Plaintiff's tax return for 2009 shows that it took in $44,372 in government grants and $18,112 from fundraising events for a total annual revenue of $62,484.[31] Of this amount, $40,000 was used to pay the salary of Plaintiff's executive director. An additional $14,015 was used for office and other expenses.[32] The tax return demonstrates that, after the deduction of expenses, Plaintiff had only $8,489 available to directly aid veterans. This amounts to about 13.5% of the

---

[29]Id.
[30]Id.
[31]Defs' Cross Mot. for Summ. J., Ex. J [#29-5].
[32]Id.

total contributions Plaintiff took in during 2009.[33]

The organizations that do the poppy and forget-me-not drives have been identified as the Veterans of Foreign Wars and the Disabled American Veterans.[34] Plaintiff has not submitted any evidence regarding what percentage of those organizations total revenue is used to aid veterans. Defendants submit that, "only about 7% of the 2010 expenditures for the Disabled American Veterans Charitable Trust went toward administrative and fundraising expenses while some 92% went towards its programs for disabled veterans."[35] Defendants also submit that the Veterans of Foreign Wars Foundation devoted 15% of expenditures to administrative and fundraising expenses, while 84% went to veterans' programs.[36] Plaintiff, because it has not demonstrated that a similar percentage of revenue is used for charitable programs as opposed to administrative expenses, has not shown that its putative comparators are "situated similarly 'in all relevant aspects.'"[37] Plaintiff's claim against Defendant Provencher, therefore, must fail.

A plaintiff must make a two-part showing to state a claim for municipal liability under section 1983. "He must demonstrate, 'both the existence of a policy or custom and a causal link between that policy and the constitutional harm.'"[38] Because Plaintiff has failed to demonstrate the existence of an underlying constitutional harm, his municipal liability claim must also fail.

IV. Conclusion

---

[33] See id.
[34] Compl. [#1] at ¶ 19.
[35] Defs' Statement of Material Facts [#31] at ¶ 25.
[36] Id.
[37] Rubinovitz, 60 F.3d at 910 (quoting Dartmouth Review, 889 F.2d at 19 (citations omitted)).
[38] Phillips v. Methuen, ___ F. Supp. 2d ____, No. 11-cv-10171-JLT 2011 WL 4793220 at *9 (D. Mass. October 11, 2011) (quoting Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985))).

For the foregoing reasons, Defendants' Motion for Summary Judgment [#29] is ALLOWED. Accordingly Plaintiff's Motion for Summary Judgment [#16] is DENIED. This case is CLOSED.

IT IS SO ORDERED.

    /s/ Joseph L. Tauro
United States District Judge